**Eliot S. SASH, Petitioner,**

v.

**Michael ZENK, Warden, et. al., Respondent.**

No. 04–CV–2476 (NGG).

United States District Court, E.D. New York.

Nov. 9, 2004.

David A. Lewis, Brooklyn, NY, for Plaintiff.

Emily E. Berger, Justin Lilien, Staff Attorney, Brooklyn, NY, for Defendant.

*Memorandum and Order*

GARAUFIS, District Judge.

Petitioner Eliot Sash ("Sash") is nearing the end of a 27 month sentence he received after pleading guilty to one count of identification document fraud and one count of possessing 15 or more counterfeit or unauthorized access devices. He has filed this petition pursuant to 28 U.S.C. § 2241, claiming that he should have been released from federal detention on November 5, 2004 because he has accrued 121 days of good-time credit pursuant to 18 U.S.C. § 3624(b). The Bureau of Prisons ("BOP") does not dispute that Sash has earned the maximum amount of goodtime credit available to prisoners incarcerated for the term served by Sash. However, the BOP, applying a construction of the good-time credit statute promulgated under 28 C.F.R. § 523.20, contends that Sash is due only 105 days of good-time credit, and therefore plans to release him on November 22, 2004.[1]

Sash argues that the BOP's method of calculating good-time credit runs counter to the plain language of 18 U.S.C § 3624(b), and is therefore unlawful. He argues in the alternative that even if the statutory language is ambiguous, deference to the BOP's interpretation is unwarranted because both legislative history and the rules of statutory interpretation dictate that the dispute should be resolved in his favor. Finally, Sash argues that because

---

1. While there is a seventeen-day discrepancy between these release dates, there is only a sixteen-day gap in the amount of good time credit to which the parties believe that Sash is entitled. This difference results from the fact that Sash believes his term expired on Saturday, November 6, entitling him to be released on Friday, November 5 if the facility in which he is confined does not release prisoners on weekends. 18 U.S.C. § 3624(a).

he has presented a substantial question to the court, and because habeas relief would be rendered ineffective if granted after November 22, he should be released on bail pending this court's decision on the merits.

Not surprisingly, the BOP agrees that the language of 18 U.S.C. § 3624(b) is unambiguous, but asserts that its own interpretation accords with the text of the statute. The BOP then argues that even if the court finds the statutory language to be ambiguous, its interpretation should be afforded substantial deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Because its interpretation of the statute is reasonable, the BOP claims, that interpretation should be afforded deference by this court, and should be upheld. Finally, the BOP argues that because the relief sought by Sash is exactly that sought by almost every habeas petitioner, no extraordinary circumstances exist in this case that would warrant Sash's release on bail pending a decision of this court on the merits.

This dispute was referred to Magistrate Judge Lois Bloom for a Report and Recommendation ("Report"). After hearing oral argument in this case, Judge Bloom issued her Report on October 27, 2004, recommending that this court deny Sash's application for a writ of habeas corpus and his motion for bail pending a decision on the merits. Sash filed a timely statement of objections to "all aspects" of the Report. (Pet.Ob.1). This court has therefore conducted a *de novo* review of Judge Bloom's Report in accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). This court adopts the Report in full, finding (A) that the language of 18 U.S.C. § 3624(b) is ambiguous; (B) that the rule of lenity should not be applied in this case to resolve that ambiguity; (C) that substantial deference to the BOP's interpretation of the statute is appropriate under *Chevron;* (D) that the BOP's interpretation of the statute is reasonable; and (E) that the BOP's interpretation does not conflict with the caselaw of this Circuit. Finally, Sash's motion for bail is denied as moot.

### *Discussion*

#### A. *Statutory Language*

The statutory provision at issue in the instant case provides, in pertinent part, that:

a prisoner who is serving a term of imprisonment of more than 1 year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with the institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate ... Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1)

According to the BOP, this statute means that "an inmate earns 54 days credit toward service of sentence (good time credit) *for each year served.* This amount is prorated when the time served by the

inmate for the sentence during the year is less than a full year." 28 C.F.R. § 523.20 (emphasis added). Thus, under the BOP interpretation, prisoners accrue 54 days of good time credit for each 365 days of "exemplary compliance with institutional regulations."

Sash contends that this interpretation robs prisoners of approximately seven days per year of good-time credit because " § 3624 ... awards the credit based on the 'sentence, beyond the time served' or the 'term of imprisonment,' that is the *total sentence imposed.*" (Pet.Br.6) (emphasis added). According to Sash, the unambiguous meaning of the statute is that prisoners should earn 54 days of credit for every 311 days of good behavior, with the result that time actually served plus good time credit equals one year of the imposed sentence. (Pet.Br.27–28).

Sash's basic textual argument runs as follows: (1) The canons of statutory construction and ordinary logic hold that a term used multiple times in the same sentence should be read as having the same meaning each time; (2) the first time the phrase "term of imprisonment" appears in the statute, it means the sentence imposed by the presiding judge; (3) the second time the phrase, "term of imprisonment" appears, it again means 'sentence imposed'; (4) therefore, when the phrase "term of imprisonment" is employed a third time to describe the period of time to which the good time credits are applied, it should again be read to mean 'sentence imposed,' and not the time served by the prisoner; and (5) this is particularly true when Congress has employed "term of imprisonment" dozens of times within an omnibus bill as shorthand for "sentence imposed." (Pet. Br. 18–22 and n. 13). Sash also contends that the clause indicating that prisoners can earn "credit toward the service of the prisoner's sentence, beyond the time served" can only mean that the good time credit calculation is based on the sentence and not actual time in prison. (Pet.Br.16–17). Finally, Sash claims that controlling precedent in this Circuit supports his reading of the statute, citing *United States v. Tocco,* 135 F.3d 116, 131–32 (2d Cir.1998) *aff'g United States v. Ferranti,* 928 F.Supp. 206, 215–216 (E.D.N.Y. 1996).

The BOP counters that "the statute requires the BOP to make a 'determination ... that, during that year, the prisoner has displayed exemplary compliance with the institutional regulations.'" (Resp.Br.13). The BOP concludes from this that the application of good time credit should be retrospective, accruing only as time is actually served. *Id.* The BOP further argues that the relevant phrase is not simply "term of imprisonment" but rather *"serving* a term of imprisonment," which the BOP argues "suggests that it is the time that is actually served, rather than the length of the sentence, that is key." *Id.* Finally, the BOP notes that the statute provides that "credit for the last year or portion of a year of the term of imprisonment shall be prorated," and that Sash's system would "essentially eliminate prorating." *Id* at 14–15.

In the face of these contrary indicators as to Congress' intent in enacting § 3624, Judge Bloom found that the language of the statute, and in particular the phrase "term of imprisonment," is ambiguous. I agree. As a number of courts have concluded, accepting Sash's reading of the statute produces the anomalous result that a prisoner is awarded credit toward the service of his sentence as a reward for good behavior during time that he will never be required to serve. *See, e.g., Pasciuti v. Drew,* 2004 WL 1247813, *3, *5 (N.D.N.Y. June 2, 2004); *Graves v. Bledsoe,* 334 F.Supp.2d 906, 908 (W.D.Va.2004).

That outcome would be more palatable if it did not appear to contravene Congress' intent that good time credits be awarded "at the end of each year of the prisoner's term of imprisonment" and following a BOP determination that the prisoner's behavior justifies the grant of good time credits. 18 U.S.C. § 3624(b)(1).

On the other hand, neither the BOP nor any of the courts that have decided this issue has been able to explain what the phrase "beyond the time served" means if it does not have the meaning that Sash imputes to it.[2] Nor is it clear from the plain language of the statute that "term of imprisonment" could not mean "sentence imposed," as Sash urges, rather than "time served," as the BOP contends. As such, this court concludes that the language of 18 U.S.C. § 3624(b) is ambiguous with respect to the maximum rate at which good time credits may accrue to federal prisoners.

This conclusion raises the question of where the court should next turn in attempting to resolve this textual dispute. The BOP argues that once the court has found that the statutory language is ambiguous, any dispute as to its meaning must be resolved in favor of the BOP because under *Chevron*, the court must defer to a duly promulgated interpretation adopted by the agency charged with administering the statute unless its interpretation is unreasonable. Sash, on the other hand, argues that *Chevron* deference is not appropriate here. He argues that before resorting to the two-step *Chevron* test, the court should employ all available instruments of statutory interpretation. Both an examination of the legislative history of 18 U.S.C. § 3624(b) and the rule of lenity, Sash argues, compel the court to reject the BOP's interpretation of the statute in favor of his. A discussion of each of these points follows below.

## B. Legislative History

Sash's principal argument with respect to the legislative history of § 3624(b) is that the present version of the statute should be read as mandating that good time credits accrue according to the sentence imposed because the prior version calculated good time credits on this basis, and "neither the language of the new statute . . . nor the legislative history in enacting it suggests that Congress intended any change in this method." (Pet.Br.22–23). Rather, Sash argues that Congress changed the manner in which good time credits are accrued and calculated to serve other ends unrelated to the historical practice of computing such credits based on the length of the sentence imposed. (Pet. Br.30–32). These factors, according to Sash, indicate that the new statute should be construed as requiring the BOP to continue to calculate good time credits based on the length of the imposed sentence.

The BOP, of course, believes that the legislative history supports its reading of the statute. Specifically, the BOP argues that in directing that no good time credits were to be awarded until a prisoner had served a year of his sentence, Congress can be reasonably understood to have intended that to "discontinue the practice of

---

2. It seems entirely plausible, however, that in pronouncing that prisoners "may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at end of each year of the prisoner's term of imprisonment," Congress simply intended to say that prisoners would receive good time credit that, "in addition to time served," counts toward the service of the prisoner's sentence. Of course, employing the clause "beyond the time served" at that point in the sentence is an exceptionally inelegant way to express that intent. On the other hand, it seems no less inelegant than using the same phrase to say "irrespective of the time served," as Sash would have it.

making the award of good time credit based upon sentence length." (Resp.Br.19).

The court finds neither party's recitation of the legislative history particularly probative in discerning Congress' intent with respect to the issue at hand. It is clear that Congress intended a sweeping reformation of administration of federal sentencing in passing the Comprehensive Crime Control Act of 1984.[3] It is equally clear that in enacting § 3624, Congress was not concerned primarily with whether good time credits should accrue based on the length of the sentence imposed or on time served. However, after reviewing the components of the legislative history cited by the parties, it remains unclear to this court whether Congress intended to alter or preserve the underlying basis for calculating good time credits. In light of this continued ambiguity concerning Congress' intent in enacting § 3624(b), this court now turns to the parties' dispute over whether the rule of lenity, on one hand, or the rule of *Chevron* on the other, should carry the day.

### C. *Rule of Lenity v. Chevron Deference*

■ Sash argues that even if the court is unable to resolve the apparent ambiguity of the statutory language by examining the legislative history of the bill, a rule of statutory construction known as the rule of lenity should be applied to break the tie in his favor. The rule of lenity holds that ambiguities as to the ambit of criminal statutes and the penalties imposed for criminal conduct should be resolved in favor of criminal defendants. *See, e.g., Bifulco v. United States*, 447 U.S. 381, 387,

100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). In this case, therefore, the rule of lenity would instruct that this court should resolve the ambiguity of the statutory language in favor of a shorter sentence for Sash.

■ This court is not persuaded that the rule of lenity should be applied, as Sash urges, to statutes delegating responsibility for administering sentences handed down by the courts. The rule of lenity exists to "ensure[ ] that the penal laws will be sufficiently clear, so that individuals do not accidentally run afoul of them and courts do not impose prohibitions greater than the legislature intended." *Pacheco–Camacho v. Hood*, 272 F.3d 1266, 1271 (9th Cir.2001). This rule "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Thus it is clear that the rule of lenity should come into play whenever statutory ambiguity leaves in doubt whether particular conduct is subject to criminal penalty and the extent of the punishment that may be imposed by a judge.

It is unclear, however, how the core purpose of the rule would be served by extending the presumption of lenity to the myriad regulations affecting the amount of time served by a prisoner who has already broken the law and been sentenced accordingly. On the other hand, it is clear that the blanket extension of the rule of lenity to the prison context would tie the hands of prison administrators and spawn endless and needless prison litigation by forcing the courts to resolve every dispute

---

**3.** The Act introduced the Federal Sentencing Guidelines, ended the practice of releasing on parole federal prisoners sentenced after its enactment, and, by revoking the existing system of distributing good time credits at rates which were dependent on the length of the sentence imposed, sought to reduce uncertainties regarding likely release dates for both prisoners and the public at-large. *See* S. Rep. 98–225, at 56 (1983).

between the BOP and a prisoner in favor of the prisoner as long as there is more than one plausible reading of the statute, and one of those readings would result in the imposition of a shorter sentence for the prisoner. That is hardly the degree of deference that the Supreme Court has demanded that the federal courts extend to executive agencies, including the BOP, charged with implementing Congressional enactments.

 Moreover, it is clear that the rule of lenity is not applicable where a duly promulgated regulation announces the official position of the agency charged with implementing the disputed statute. The Supreme Court has explicitly rejected the argument that Sash makes here, to wit, that "the rule of lenity should foreclose any deference to the Secretary's interpretation ... because the statute includes criminal penalties." *Babbitt v. Sweet Home Chapter of Communities*, 515 U.S. 687, 704 n. 18, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). As the Court explained, "[w]e have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement." *Id.* Instead, the Court indicated in *Babbitt* that the publication of a regulation after notice and comment "gives the public sufficient warning to ensure that nobody mistakes the ambit of the law or its penalties." *Pacheco–Camacho*, 272 F.3d at 1272. *See also Reno v. Koray*, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (treating with "some deference" under *Chevron* a BOP internal agency guideline interpreting a statute whose meaning was disputed by the parties before the Court). In short, the rule of lenity is not applicable where the agency responsible for administering an ambiguous penal statute has announced its position on the meaning of that statute through a duly promulgated regulation.

The Supreme Court case cited by Sash on this point, *Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132, is not to the contrary. There, the Court decided that it did not owe any deference to the Justice Department's construction of a criminal statute that was rendered to give government officials legal advice concerning its scope. As the concurring opinion cited by Sash demonstrates, however, *Crandon* is easily distinguishable from the case presently before the court. There, Justice Scalia explained that the Justice Department's interpretation was not entitled to deference because:

The law in question, a criminal statute, is not administered by any agency but by the courts. It is entirely reasonable and understandable that federal officials should make available to their employees legal advice regarding its interpretation; and in a general way all agencies of the Government must interpret it in order to assure that the behavior of their employees is lawful—just as they must interpret innumerable other civil and criminal provisions in order to operate lawfully; but that is not the sort of specific responsibility for administering the law that triggers Chevron.

*Id.* at 177, 110 S.Ct. 997.

 Here, of course, the law in question is indisputably administered by the BOP, which is charged with determining whether each eligible prisoner has earned good time credit within a given year, as well as the amount of credit that the prisoner is entitled to receive, and the date on which the prisoner has served out his sentence. 18 U.S.C. § 3624. This is precisely the "sort of specific responsibility for administering the law that triggers Chevron." *Crandon*, 494 U.S. at 177, 110 S.Ct. 997. As such, this court finds *Crandon* to be a

less persuasive guide to the question raised by the parties than the precedents cited above, which indicate that deference trumps lenity when courts are called upon to resolve disputes about ambiguous statutory language, at least where the agency interpreting the criminal statute is: (1) responsible for administering the statute; and (2) that agency has promulgated its interpretation pursuant to the notice and comment provisions of the Administrative Procedure Act. The rule of lenity therefore does not require that this court adopt Sash's interpretation of § 3624(b). Rather, the rule of *Chevron* dictates that substantial deference must be granted the BOP's interpretation of the statute.

### D. *Permissibility of the BOP's Interpretation*

 Having decided that the language of § 3624(b) is ambiguous, that the legislative history of the bill is inconclusive with respect to the parties' dispute, and that *Chevron* deference is appropriate here because the rule of lenity does not apply, this court easily reaches the conclusion that the BOP's interpretation of the statute is reasonable. Given that the statute does not clearly direct whether the "term of imprisonment" upon which the accrual of good time credits should be based is the length of the sentence imposed or the period of time served by the prisoner, the BOP has acted reasonably in construing the statute to mean that it must, "at the end of each year" of imprisonment, determine whether a prisoner has "displayed exceptional compliance with the institutional disciplinary regulations" and distribute good time credits to prisoners accordingly. Because the BOP's interpretation of § 3624(b) is "based on a permissible construction of the statute," this court is required to uphold the agency's position and reject Sash's challenge. *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778.

### E. *Prior Second Circuit Precedent*

Contrary to Sash's suggestion, the BOP's construction of the statute does not conflict with any controlling Second Circuit precedent. The only case to which Sash points for this argument is *United States v. Tocco*, 135 F.3d 116 (2d Cir.1998). There, the Second Circuit affirmed a district court's sentencing decision despite a defendant's contention that the sentence was improper because, although he had not been sentenced by the jury to a life sentence, he had received a sentence longer than his life expectancy. *United States v. Ferranti*, 928 F.Supp. 206, 215–16 (E.D.N.Y.1996). The Second Circuit found that the sentence was permissible because the judge was entitled to take into account the good time credits that the defendant might earn in approximating a jail term just shy of the defendant's life expectancy. Because in calculating that sentence, the district court judge stated, without any further discussion, that the defendant "will receive 54 days of good-time credit for each year of his prison sentence," and the Second Circuit affirmed that decision, Sash argues that the Second Circuit in *Tocco* adopted his reading of the statute by reference. Sash asserts that this holding therefore binds the district courts of this circuit.

I disagree. The validity of the BOP's interpretation of § 3624(b) was not at issue in either *Tocco* or *Ferranti*, and the issue was not briefed by any party in either case. This court cannot so lightly presume that binding precedent was created by a single declaratory statement of a district court judge, even one as eminent as my colleague, Judge Jack Weinstein, followed by the affirmation of the district court opinion on other, albeit related, grounds. In light of the growing number of habeas appeals reaching the district courts on this

issue, it is likely that the Second Circuit shortly will have an opportunity to determine the validity of the BOP's interpretation of § 3624(b) based on a full record. Until that time, this court declines to treat the Second Circuit's approval of the sentence imposed in *Ferranti* as having settled a dispute that the Court of Appeals did not confront.

## F. *Bail*

Sash's motion for bail pending on a decision on the merits of his application for a writ of habeas corpus is denied as moot, as this court has now spoken to the substantive issues raised in his petition.

### Conclusion

For the reasons discussed above, Sash's petition for a writ of habeas corpus is DENIED. A certificate of appealability shall issue forthwith.

SO ORDERED.